(42 Misc. Rep. 425.)

NEW YORK CONTRACTING & TRUCKING CO. v. CITY OF NEW YORK.

(Supreme Court, Special Term, New York County. January, 1904.)

1. MUNICIPAL CORPORATIONS—LEASE OF WHARF PRIVILEGE—CONSTRUCTION—INJUNCTION.

In May, 1901, the board of docks of the city of New York adopted a plan making a radical change in the pier line and the bulkhead line at the foot of West Seventy-Ninth street, which would cut off access to the pier from the river. In July, 1901, the city of New York leased the wharfage of the pier at the foot of West Seventy-Ninth street to plaintiff for 10 years, with a provision authorizing the city to terminate it on notice if the board of docks should proceed with the improvement of the river front, according to the plans "now adopted and approved" under any existing law. In November, 1902, the plaintiff received notice from the commissioner of docks of an intention to improve the river front, and that the lease would be terminated December, 1902. To an action brought by plaintiff to enjoin the city from ousting it or interfering with the pier, the city pleaded that without any authority plaintiff had used it as a dump, and also alleged that Laws 1894, pp. 296, 306, c. 152, §§ 1, 9, appropriating the water front on the Hudson river from Seventy-Second street to Seventy-Ninth street to Riverside Park, except two public wharves, one at the foot of West Seventy-Ninth street, gave the board of docks control of the river front at the foot of West Seventy-Ninth street for commercial purposes, and that such act and the charter of New York authorized the board to change the pier at the foot of Seventy-Ninth street. Held, that the existing law referred to in the lease on the subject of changing the pier at the foot of West Seventy-Ninth street was

the law of 1873, p. 507, c. 335, § 88, providing that the dock board should not have the power to change the exterior lines of the bulkheads as established by law, and that neither the law of 1894 in relation to Riverside Park, nor the city charter, gave authority to adopt the plan of May 17, 1901, so far as concerned the pier at the foot of West Seventy-Ninth street.

2. SAME—USE AS DUMP.

In the suit against the city, the separate defense that a pier had been used as a dump was insufficient, there being no covenant in the lease forbidding such use.

Action by the New York Contracting & Trucking Company against the city of New York.   Demurrer to answer sustained.

James A. Deering, for plaintiff.

George L. Rives, Corp. Counsel, for defendant.

DAVIS, J.   The action is brought to restrain defendants from obstructing plaintiff's free use of the pier at the foot of West Seventy-Ninth street, New York City, by the construction of new piers according to a certain plan adopted by the board of docks May 17, 1901, and from interfering with plaintiff in its collection of wharfage and cranage at this pier during the term of a lease made to the plaintiff by the city of New York July 22, 1901, and from ousting the plaintiff from the pier, or from ending its term and interest in the lease, for the purpose of building new piers according to the plan referred to.   It appears from the complaint, and is admitted by the answer, that on or about May 17, 1901, the board of docks adopted certain plans for the improvement of the water front on the North river, and these plans were afterward approved by the commissioners of the sinking fund; that the scheme of improvement materially changed the bulkhead lines and pier lines as then existing, and included a radical change in the pier line and bulkhead line at the foot of West Seventy-Ninth street.   Subsequently to the adoption of this new plan, and on or about July 22, 1901, the city made a written lease of the wharfage and cranage arising from the use of the pier in question to the plaintiff for the term of 10 years from August 1, 1901, with the privilege of two renewals.   It is admitted that plaintiff has been and now is collecting wharfage and cranage to which it became entitled by virtue of the terms of the lease, and has paid to the defendant the rent reserved in the lease, up to and including January 31, 1903.   The lease contained a provision that:

"If at any time during the said term the said board of docks shall determine to proceed with the work of building or rebuilding wharves, piers, bulkheads, basins, docks, or slips within a section or district of the water front which shall include the wharf property hereinbefore described, according to any plan or plans now adopted and approved and pursuant to any existing or future law, and if the said board shall determine that for the purpose of such building or rebuilding it will be necessary to terminate the interest of the plaintiff in the wharfage to arise, accrue, etc., or if at any time during the said term the said board of docks shall determine that the said wharf property shall be used for some other purpose than for the purpose of the collection of wharfage, and that it will be necessary to terminate the interest of the plaintiff in such wharfage, then upon the receipt by the plaintiff of written notice of a resolution of the said board of docks to that effect, describing the wharf property and the interest of the plaintiff in the said wharfage and in the said wharf property, it shall be thereby terminated."

Under this provision the defendant claimed the right to terminate plaintiff's lease in order to enable it to carry out the plan of improvement adopted by the board of docks on May 17, 1901, and approved by the commissioners of the sinking fund on June 20, 1901. Accordingly, about the 3d day of November, 1902, the commissioner of docks gave notice in writing to the plaintiff "that he had determined to proceed with the work of building or rebuilding the wharves, piers, bulkheads, basins, docks, or slips within the section or the district of the water front of the city of New York between West Seventy-Eighth and West Eightieth streets, on the North river, which district includes the wharf property leased to the plaintiff, according to the plan adopted by the department of docks on May 17, 1901, and approved by the commissioners of the sinking fund on June 20, 1901, and that for the purpose of such building or rebuilding he had determined that it would be necessary to terminate the interest of the plaintiff in the lease of the wharfage arising from the said wharfing property, or from any part thereof, and that he thereby terminated the interest of the plaintiff in and to the said lease in December 31, 1902." It is admitted that under the lease the plaintiff was entitled to the right of access over the adjoining waters of the North river, at all times, by all boats and vessels, to the pier, and to have the adjacent lands under water belonging to the city of New York remain free from any unlawful structures which would in any way prevent access to the pier on all sides thereof, or its full use and enjoyment by the plaintiff, and all persons desiring or inclined to use the pier for the loading or unloading of vessels thereat; that the defendant, claiming to act under the statutes relating to the docks, wharves, and ferries of the city of New York, threatens and intends to take possession of the pier and the land under water adjoining the said pier, and, for the purpose of carrying out the plan of May 17, 1901, to drive piles in the adjoining waters, and to construct cribwork in and about the pier; that, because of this, boats and vessels will be unable to approach the pier on any of the sides thereof so as to load or unload thereat, and the plaintiff will be deprived of all wharfage and cranage from the pier; that the defendant threatened in December 31, 1902, to exclude the plaintiff from the pier, and to prevent it from attempting to use it for the loading or unloading of vessels, and the receipt and collection of wharfage and cranage thereat. It is also admitted that by chapter 697, p. 1748, of the Laws of 1867, the commissioners of the Central Park were authorized to fix and establish pier lines and bulkhead lines along the North river, from Fifty-Fifth street to Spuyten Duyvil creek, and that their action was to be shown by maps to be filed, but the lines laid down on their said maps were not to be final until confirmed by the Legislature; that on November 19, 1867, the commissioners made a map showing pier lines and bulkhead lines on said river, between Fifty-Fifth street and Spuyten Duyvil creek, and that by chapter 288, p. 590, of the Laws of 1868, the lines laid down upon the said map were finally established and approved by the Legislature; that upon said plan the bulkhead or a line of solid filling was fixed as a continuous line, which at Seventy-Eighth street was 234 feet 5¾ inches westerly of the westerly line of Twelfth avenue, at Seventy-Ninth street 238 feet westerly of the westerly line of

Twelfth avenue, and at Eightieth street was 241 feet 1 inch westerly of the westerly line of Twelfth avenue; and that upon said map the pier line was fixed at Seventy-Ninth street, at a distance of 600 feet west of Twelfth avenue.   It is admitted that the plan approved by the department of docks on May 17, 1901, established new and different bulkhead lines and pier lines at Seventy-Ninth street.   Briefly, the new bulkhead line on the map of May 27, 1901, is 74 feet 5 inches east of the present line, as fixed by the act of 1868; the new pier line on the map of May 27, 1901, is 25 feet 3 inches west of the present line; and the new pier line on the map of May 27, 1901, is 98 feet 11 inches longer and 10 feet wider than that established by the act of 1868.   It is also admitted that no plan for the construction of wharves, piers, or bulkheads at Seventy-Ninth street, North river, other than that of May 17, 1901, has been approved by the department of docks, or the board of commissioners of the department of docks, or the commissioner of docks and ferries, or approved by the commissioners of the sinking fund.

The plaintiff claims that the defendant, by the notice of December 3, 1902, unlawfully attempted to cancel its lease; that the grounds assigned for its cancellation, to wit, the adoption of the plan of May 17, 1901, and the determination of the board of docks to improve the water front at West Seventy-Ninth street according to this plan, were not legally sufficient under the lease, the proposed plan of improvement having been determined upon and adopted in violation of law, which prohibited substantial changes in the bulkhead lines and pierhead lines at West Seventy-Ninth street.   The plaintiff, therefore, begins this action to enjoin the defendant from taking possession of the pier at the foot of West Seventy-Ninth street, and ousting it under a claim that it had lawfully canceled the lease.   The defendant pleaded certain general denials, and then sets up certain separate defenses, to two of which the plaintiff has demurred on the ground of insufficiency in law.   One of the defenses demurred to is contained in paragraphs 15 and 16 of the answer, and will be considered later.   The other defense demurred to is that the plaintiff, in violation of the covenants and conditions of its lease, erected and maintained upon the wharf improper and unlawful structures, and, without any authority or consent, the plaintiff used the wharf generally for a dump and ramp for waste material, refuse, and rubbish.   It will be observed that these allegations are pleaded as a complete defense.   If, therefore, they do not amount to that, or constitute a counterclaim, the demurrer to this defense must be sustained. Thompson v. Halbert, 109 N. Y. 329, 16 N. E. 675; Canaday v. Stiger, 55 N. Y. 452.   There is only one allegation of fact in this defense, to wit, that the plaintiff, without any authority or consent, used the demised property generally for a dump and ramp for waste material, refuse, and rubbish.   The lease attached to the pleadings is the source of the rights of the parties to this action, and one fails to find there anything prohibiting the use of the wharf in question as a dump and ramp.   Yet this single allegation of fact is relied upon as a complete defense, when, even if true, it would not be a violation of any covenant of the lease.   But assume that such a use of the wharf is prohibited under the terms of the lease; even then the defense as pleaded would

be insufficient in law, because the lease specifically prescribes certain preliminary steps to be taken by the defendant before its right to cancel the lease and oust the plaintiff is perfected, and none of these preliminary steps has been taken, so far as it appears from this part of defendant's answer. For instance, the lease provides that, in case the party of the second part (the plaintiff) shall violate any of its covenants, it shall be lawful for the party of the first part, by resolution of the said board of docks, at its discretion, to declare the lease to have terminated, and forever thereafter to be null and void, and to serve a copy of the resolution on the party of the second part; that then and from thenceforth the lease shall come to an end, and the wharf revert to the party of the first part the same as if the lease had never been made, and that thereupon the party of the second part will peaceably surrender the wharfage to the party of the first part. Thus the defense is insufficient as such, (1) because of the absence of allegations of facts showing an unlawful use of the wharf in question, (2) because there is no allegation showing the adoption by the board of docks of a resolution terminating the lease, and (3) because there is no allegation of service of a copy of such a resolution upon the lessee as required by the lease. It follows, also, from the above considerations, that the use and maintenance by the plaintiff of dumps and ramps on the wharf would not give the defendant a cause of action against the plaintiff under this lease, and therefore the matter pleaded is not sufficient as a counterclaim. Nor is the contention sound that the fact pleaded in this defense should be allowed weight as a counter equity in favor of defendant. There is no equity in punishing the plaintiff for doing what it appears to have had a perfect right to do. As to this defense, I think the demurrer should be sustained.

A more complicated question is presented by the demurrer to the defense contained in paragraphs 15 and 16 of the answer. It is alleged in this defense that under chapter 152, p. 296, of the Laws of 1894, control of the water front, in which are located the bulkhead and pier referred to in the lease, was given to the department of docks and ferries for commercial purposes; that on May 17, 1901, pursuant to certain provisions of the Greater New York Charter for the adoption of a plan for the improvement of the water front of the city of New York, the board of docks determined upon the plan for the improvement of that section of the water front between Seventy-Seventh street and Eighty-First street which had been placed under the jurisdiction of the department of docks and ferries by the act of 1894; that after the determination of the board of docks upon the said plan it was, as provided in the charter, duly adopted by the commissioners of the sinking fund on the 20th day of June, 1901, and that, the plan having been thereafter returned to the office of the department of docks and ferries and filed therein, became, as provided by law, the sole plan or plans in accordance with which any improvement of the water front in that section or territory could be made; that, subsequently to the adoption of the plan, plaintiff and the defendant made and entered into the lease of July 22, 1901. Then follow allegations setting forth the various conditions referred to above, upon the happening of which the defendant has the right to terminate plaintiff's

interest under the lease, together with the allegation "that thereafter, and on or about the 3d day of December, 1902, the defendant, Mac-Dougall Hawkes, commissioner of docks of the city of New York, determined that, for the purpose of proceeding with the work of building or rebuilding the wharves, piers, etc., within the section included in the plan referred to, it was necessary to terminate the interest of the plaintiff in the wharfage and wharf property included in the lease, and thereupon caused to be served upon the plaintiff the notice of cancellation mentioned in the complaint, and that by reason thereof the interest of the plaintiff in the wharf property was terminated." For the purpose of the demurrer all the material allegations of fact in this defense are taken as true, and it is admitted by the answer that the plan of improvement referred to materially changes the bulkhead lines and pier lines of the district in question. The plaintiff contends that the plans were determined on and adopted without authority and in violation of law; that neither the Laws of 1894 (p. 296, c. 152) nor the charter of 1897 (Laws 1897, p. 1, c. 378) conferred any power upon the city authorities to adopt a plan of water-front improvement which materially changed the bulkhead lines and pier lines at the foot of West Seventy-Ninth street; and that therefore the attempted cancellation of its lease was illegal. It properly claims that the lease contemplated the adoption of legal plans as a condition of its cancellation, and that the defendant can base no rights on the adoption of plans in violation of law. If, therefore, it is true that the defendant had no authority under the Laws of 1894 and the charter of 1897 to adopt the plans referred to, the allegations of fact contained in the separate defense are necessarily insufficient in law upon their face to constitute a defense. It is contended by the defendant that these inquiries are not relevant on this demurrer. In the separate defense now under consideration the defendant alleges that certain facts exist by virtue of the Laws of 1894 and the Laws of 1897, and that these facts are a complete defense to plaintiff's demand for an injunction. In other words, it refers to these laws and the lease as the particular source of its right to take the steps which it has pleaded as entitling it to cancel plaintiff's lease. Now, an examination of these statutes thus made part of the defense may disclose that the proceedings taken by the defendant were not pursuant to, but in violation of, those very laws. If so, the defense must be insufficient in law on the face thereof, and the demurrer good. It is therefore pertinent to examine these statutes to ascertain whether the plans referred to were adopted "pursuant to any existing law," to quote the words of the lease. Under section 1 of chapter 152, p. 296, of the Laws of 1894, the water front on the Hudson river, from Seventy-Second street to One Hundred and Twenty-Ninth street, with the exception of two parcels, is appropriated for public uses as an extension of Riverside Park. The two parcels excepted are set apart for public wharves. One of these parcels includes the pier at the foot of West Seventy-Ninth street, and is bounded on the east and west by lines established by chapter 288, p. 590, of the Laws of 1868. Under section 9, p. 306, of this act of 1894, the department of docks, in respect to these two parcels of land, is given "the same powers of

control, maintenance, construction and jurisdiction which the said department has and now possesses under existing laws in respect to the water front or lands under water in other portions of said city, including the power to erect and maintain piers extending to the pier line as established by chapter two hundred and eighty-eight of the laws of eighteen hundred and sixty-eight." This provision did not increase the power of the dock department beyond what it possessed under existing laws, and it specifically recognized the act of 1868 as still in force. The "existing laws" referred to expressly provided that the dock board "shall not have the power to change the exterior lines of piers and bulkheads in the city of New York as now established by law." Laws 1873, p. 507, c. 335, § 88; Laws 1882, p. 199, c. 410, § 711. So far as the pier lines and bulkhead lines at the foot of West Seventy-Ninth street are concerned, they had been established by chapter 288, p. 590, of the Laws of 1868, and the act of 1894 conferred no power upon the dock board to change them, either when acting alone on with the approval of the sinking fund commissioners. Nor does the charter of 1897 confer this power, but, on the contrary, it contains the same prohibition against a change by the dock board of the pier lines and bulkhead lines, established by law (section 818, p. 291), except that, with the approval of the commissioners of the sinking fund, the board may change the pierhead lines and construct new piers in certain specified localities, which do not include West Seventy-Ninth street (section 819, p. 291). The enumeration in the statute of these special exceptions, after the general prohibition, indicates an intention in the Legislature to preserve unchanged all other pier and bulkhead lines theretofore established by law. In the charter revision of 1901 we find there retained the same prohibition against changing pier lines with the same exception. Sections 817–819 Laws 1901, pp. 346, 347, c. 466. From an examination of the various statutes cited by counsel as defining the powers of the dock department, I am convinced that since the passage of the act of 1873 the dock department has never had the power, with or without the approval of the commissioners of the sinking fund, to change the bulkhead lines and pier lines at the foot of West Seventy-Ninth street as established by the act of 1868. It may be that this power existed under the act of 1870 (Laws 1870, p. 390, c. 137), as amended by the charter of 1871 (Laws 1871, p. 1235, c. 574); but if so, it was not exercised, and by the passage of the act of 1873, the power, if it ever existed, was taken away, and has not been restored since. Indeed, it is admitted by the defendant that no such power was exercised by the dock department down to May 17, 1901, and that the only plan ever determined upon by the city, and adopted by the commissioners of the sinking fund, for improving this pier and bulkhead, is the plan of May 17, 1901, which substantially changes the existing pier lines and bulkhead lines at this point (West Seventy-Ninth street). It may be claimed that the power to adopt the plan of May 17, 1901, is included in the power to alter and amend the plan adopted in 1871, as conferred by section 819, p. 291, of the charter of 1897. It is a full answer to this contention to point out that the plan of May 17, 1901, was not adopted as an alteration or amendment to the plan of 1871, which covered the territory

between the Battery and Grand street, on the East river, and the Battery and West Sixty-Second street, on the North river. See charter of 1897, p. 291, § 819. Furthermore, I think this power to alter and amend the plan of 1871 is limited to alterations and amendments within the limits of water front indicated on that plan, to wit, from West Sixty-Second street, on the North river, to the Battery, and thence to Grand street, on the East river. I am confirmed in this opinion by the fact that the same section (819) contains a special provision allowing a change of pier lines as far north as West Seventieth street, a part of the territory covered by the act of 1868. In view of the foregoing, I conclude that the plan of May 17, 1901, was unlawfully determined upon and adopted, and from that action the defendant can gain no right to cancel the plaintiff's lease, and the various steps pleaded as taken to accomplish that end were ineffective for that purpose; and therefore, although all the allegations of fact in this separate defense may be true, they would still be insufficient on their face as a defense to the cause of action set forth in the complaint.. The demurrer to these defenses is therefore sustained, with costs.

Demurrer sustained, with costs.